In the Matter of MILTON F. LAWANDUS, an Attorney, Respondent. GRIEVANCE COMMITTEE OF THE EIGHTH JUDICIAL DISTRICT, Petitioner.

Fourth Department, May 31, 1984

APPEARANCES OF COUNSEL

*David E. Brennan* for petitioner.

*Roy R. Cesar* for respondent.

OPINION OF THE COURT

*Per Curiam.*

Respondent was admitted to practice by this court on January 16, 1946 and maintains an office for the practice of law in Buffalo. In this proceeding to discipline respondent for professional misconduct, petitioner moves to confirm the report of the referee and respondent cross-moves to amend or reject certain findings of the referee. The motions are granted and the report is confirmed in accordance herewith. The petition which instituted this disciplinary proceeding alleges that respondent is guilty of unethical professional conduct in violation of the Estates, Powers

and Trusts Law and various Canons of the Code of Professional Responsibility. The charges arose out of respondent's handling of two estates.

### THE MILLER ESTATE

Donald T. Miller died intestate as a result of injuries sustained in an automobile accident on June 22, 1974, survived by Marion L. Miller, his wife, and three minor children. Marion Miller retained respondent to represent her in a wrongful death action. Respondent drew up a retainer agreement which permitted him to retain the proceeds of the wrongful death action for two years interest free and thereafter with interest at the rate of 3% per year. The agreement authorized him to retain one third of any recovery, to hold such funds personally pending further instructions from his client, and provided that he was to maintain strict secrecy respecting the arrangement set forth in the retainer agreement. Marion Miller was to hold respondent harmless and free from personal liability. Respondent filed a claim on behalf of the estate and succeeded in settling it for $50,000. A check in the amount of $48,000, the net proceeds paid in settlement, was deposited by respondent in his checking account on June 13, 1975. That settlement was not submitted to the Surrogate's Court for approval. In September, 1981 Mrs. Miller demanded that respondent remit the proceeds. He failed to do so, explaining in two letters that by his retention of the funds he was saving the estate the expense involved in the usual proceedings. The proceeds were not paid to Mrs. Miller until she retained substitute counsel who instituted legal proceedings against respondent. Respondent then demanded a general release from Mrs. Miller as a condition of releasing the funds. On December 6, 1982 he remitted the sum of $38,618.04 from a checking account entitled "Milton F. Lawandus, Attorney Account," a different account from the one in which the funds were originally deposited. From the time of receipt of the proceeds until payment of those funds to the client, respondent did not retain them in any segregated trust or escrow account.

### THE CRAWFORD ESTATE

On March 16, 1956, Matthew J. Crawford, Jr., executed a will which provided for respondent to be successor executor in the event Eleanor Crawford, testator's wife, should

predecease him. The will named Crawford's only child, Matthew J. Crawford, III, as sole beneficiary. On September 23, 1958, respondent caused to be prepared and Matthew Crawford, Jr., executed a codicil to the will which changed the manner of testamentary distribution by appointing respondent trustee of a "spendthrift trust" for the benefit of Matthew until such time as he reached age 29. Matthew J. Crawford, Jr., and his wife were fatally injured in an automobile accident on October 17, 1962. Respondent filed the will without codicil in December, 1962. The codicil was not offered for probate at that time and its existence was not revealed to the special guardian appointed on behalf of Matthew, who was 20 years old at the time of his parents' death. A copy of that codicil was mailed to the Surrogate 14 years later, at which time respondent offered to probate it. From the issuance of letters testamentary to the respondent on December 10, 1962 until said letters were revoked by the Surrogate on December 17, 1979, respondent administered the estate having a value of approximately $116,570. One of the estate assets was a life insurance policy with a value of $22,191.26 at the time of decedent's death. That policy was not liquidated until respondent was compelled to file an account by the Niagara County Surrogate in 1979. The insurance company issued a check in the amount of $38,188.66 representing the initial value of the policy plus interest at the rate of 3%. At the time respondent's letters were terminated by the Surrogate, there existed a checking account in the name of "Estate of Matthew J. Crawford, Jr., Deceased" in the amount of $41,822.11, which account book was in possession of the respondent. Respondent failed to prepare and file a New York State estate tax return or a Federal estate tax return, thereby causing the estate to suffer substantial tax penalties and interest. None of the estate proceeds were invested in a manner so as to generate income for the estate or its beneficiary.

The foregoing demonstrates professional misconduct of a serious nature. We find that the conduct outlined above constitutes a violation of EPTL 5-4.6 and of various sections of the Code of Professional Responsibility: DR 1-102 (A) (4); DR 2-106 (A), (B); DR 6-1-101 (A) (3); DR 6-102 (A);

and DR 9-102. Accordingly, respondent should be suspended from the practice of law for a period of three years and until the further order of this court.

DILLON, P. J., HANCOCK, JR., BOOMER, O'DONNELL and SCHNEPP, JJ., concur.

[The following page is 601.]